[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 26, 2006
THOMAS K. KAHN
CLERK

No. 04-13747

_____

BIA Nos. A95-220-664 & A95-220-665

GONZALO MORA,
GLORIA INES MENDEZ,
MATEO MORA,
SYLVANA MORA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 26, 2006)**

Before EDMONDSON, Chief Judge, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Gonzalo Mora, his wife Gloria Ines Mendez, and their children, Mateo Mora and Sylvana Mora, natives and citizens of Colombia,[1] petition for review of the adoption and affirmance by the Board of Immigration Appeals ("BIA") of the decision of the Immigration Judge.  The decision denied asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").[2]  No reversible error has been shown; we deny the petition.

We review the decisions of the IJ and the BIA in this case.  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well").  An IJ's factual determination that an alien is not entitled to asylum "must be upheld if it is supported by substantial evidence."  Mazariegos v. U.S. Attorney Gen., 241 F.3d 1320, 1323 (11th Cir. 2001).  "Under this highly deferential test, we affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal quotation

---

[1]  Mora included his wife and children as derivatives in his asylum application.  We refer only to Mora in this opinion, but our decision about Mora also applies to his wife and children.

[2]  On appeal, Mora does not offer argument on the denial of CAT relief; therefore, this claim is abandoned.  See Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that petitioner abandons issue by failing to offer argument on that issue).

and alteration omitted).  "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it."  Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

An alien may obtain asylum if he is a "refugee": a person unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of" a protected ground, including political opinion.  8 U.S.C. §§ 1101(a)(42)(A); 1158(a)(1), (b)(1).  We have explained that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution."  Sepulveda, 401 F.3d at 1231 (internal quotation omitted).  The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence.  Al Najjar, 257 F.3d at 1284.

An alien who seeks withholding of removal must demonstrate that his life or freedom would be threatened in the country of removal because of a protected ground.  Mendoza, 327 F.3d at 1287.  The alien must show that he "more-likely-than-not would be persecuted or tortured upon his return" to his country.  Id.  If an alien is unable to demonstrate that he is eligible for asylum, he necessarily has failed to meet the higher burden of proof required for withholding of removal.  Al Najjar, 257 F.3d at 1292-93.

Mora testified that, in Colombia, he was a member of the Citizen's Front, which is part of Colombia's Conservative Party, and that he provided computer and communications equipment for Conservative Party campaigns. During the period that he supported the Conservative Party, Mora received a telephone call from a person who claimed to be a commander of the Revolutionary Armed Forces of Colombia ("FARC"), a guerilla organization. The commander informed Mora that the FARC was aware of his work with the Conservative Party and that Mora had been selected to support the FARC. A few weeks later, Mora received additional telephone calls from people urging him to remember his conversation with the FARC commander. Two people, who claimed to be FARC spokesmen, then visited Mora at his office, pointed a gun at him, and warned him that he should support the guerillas. After receiving telephone calls from people threatening to kill him and his family, Mora and his family left for the United States. His mother-in-law, who remained in Colombia, later received a "sympathy card" from the FARC that announced Mora's death and telephone calls informing Mora's mother-in-law that she should tell Mora to return to Colombia.

Mora asserts that the IJ erred in finding that he had not presented sufficient credible evidence to show past persecution or a reasonable fear of future persecution based on his political opinion related to his involvement with the

4

Conservative Party. Substantial evidence supports the determination that Mora failed to meet his burden that he had been persecuted, or that he faced a well-founded fear of future persecution, on any protected ground.

Mora's claims of harassment not accompanied by physical harm to himself or his family does not compel us to reverse the IJ's conclusion that the FARC's alleged conduct was insufficient to demonstrate past persecution. See Sepulveda, 401 F.3d at 1231 (explaining that "a few isolated incidents of verbal harassment or intimidation" does not establish past persecution); Silva v. U.S. Attorney Gen., 448 F.3d 1229, 1237-38 (11th Cir. 2006) (concluding that anonymous threats and a condolence note signed by the FARC about the alien's death did not amount to persecution).

Substantial evidence also supports the conclusion that Mora failed to show a well-founded fear of future persecution. As we have discussed, the past acts of the FARC against Mora did not constitute persecution. In addition, although Mora testified that his mother-in-law received some threats after he left Colombia, Mora has not alleged that his mother-in-law or other family members who remain in Colombia--including his father, three brothers, and four sisters--have been harmed

5

by the FARC.[3]  See Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1259 (11th Cir. 2006) (noting that an alien did not establish a well-founded fear of future persecution when his family continued to live unharmed in his country of removal).  Therefore, the evidence does not compel the conclusion that Mora is eligible for asylum.[4]  Because he has failed to demonstrate that he is eligible for asylum, Mora also has failed to meet the higher burden of proof required for withholding of removal.  See Al Najjar, 257 F.3d at 1292-93.

Based on the foregoing, we deny the petition for asylum and withholding of removal.

PETITION DENIED.

---

[3] On appeal, Mora states for the first time that the FARC killed his nephew after Mora left Colombia.  Because we cannot consider evidence that is outside of the administrative record, we do not consider Mora's new argument.  See 8 U.S.C. § 1252(b)(4)(A) (explaining that we may decide petition "only on the administrative record on which the order of removal is based").

[4] To the extent that Mora challenges the IJ's conclusion that he could relocate to an area of Colombia where the FARC would not threaten him, we need not consider this argument because, for the reasons discussed, Mora otherwise has failed to meet his burden that he is eligible for asylum based on his fear of future persecution.